# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00339-CR

**Jason DeLosSantos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-12-204039, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, the district court convicted Jason DeLosSantos of burglary of a habitation and assessed punishment at twelve years' imprisonment. *See* Tex. Penal Code § 30.02. DeLosSantos challenges his conviction on appeal, contending that the evidence was legally insufficient to support the judgment and that the trial court erred in the admission of two exhibits at trial. We will affirm the district court's judgment.

## DISCUSSION

DeLosSantos's conviction stems from the burglary of a residence owned by his acquaintance, Peggy Hill. The evidence at trial included testimony from Hill, Hill's neighbor who witnessed DeLosSantos breaking a window of Hill's residence, a number of police officers who responded to the neighbor's 911 call, and a DNA analyst who tested blood collected from the frame of the broken window. Hill identified DeLosSantos in court as a man whom she had met through a mutual friend a week or two before the break-in. DeLosSantos helped Hill to move her jewelry,

furniture, and other household items from a storage facility to her residence. He also went inside her home to help arrange the items. Hill did not pay DeLosSantos for his assistance and, after a disagreement, she gave DeLosSantos a ride home and did not see him again until trial. Hill testified that she had not given DeLosSantos permission to enter her home on the day of the break-in. When Hill came home that day, she found two police cars in the neighborhood and two more outside of her home. After an officer notified her of the burglary, Hill noticed a portion of her kitchen window had been broken and its frame "pulled out and bent in the middle."

Hill's neighbor, Hiram Hernandez, testified that on the day of the break-in he saw a man, whom he identified as DeLosSantos, get out of a car parked outside Hill's residence and knock on the door to Hill's residence. When no one responded, Hernandez saw DeLosSantos walk around in circles and then using his hand to break a window, apparently injuring himself while reaching inside the broken window and unsuccessfully attempting to open the adjacent door. Hernandez called 911 to report what he had witnessed, including a description of the man he had seen and the vehicle he arrived in.

Joseph Lucas, a supervising officer with the Austin Police Department, responded to the burglary call and noticed the broken window with what appeared to be blood on the window and frame. Officer Lucas testified that the window appeared large enough to allow a person's arm to enter but not an entire body and was located only a couple of feet from the door. He observed a lawn chair positioned so as to reach the broken window. Another responding officer, Nicholas Moore, testified that while en route to the residence he stopped a vehicle matching the description given by Hernandez during his 911 call. DeLosSantos was not inside the car. While questioning the vehicle's occupants, Officer Moore saw a backpack and a t-shirt that appeared to be soiled with blood. A

third APD officer, Charles Watkins, testified that he detained DeLosSantos at a gas station near the crime scene because DeLosSantos matched the description given by Hernandez. Officer Watkins observed blood on DeLosSantos's arm and a small cut on his wrist. Officer Watkins also found that DeLosSantos had a screwdriver on his person.

APD Officer Mark Evans testified that he collected DNA swab samples from DeLosSantos pursuant to a search warrant. APD property crime technician Sarah Jordan testified that she collected samples from a reddish-brown stain located on Hill's broken window, and Elizabeth Morris, a senior DNA analyst with APD, testified that the stain presumptively tested positive as blood. The DNA sample from this stain was consistent with that taken from the swab of DeLosSantos's mouth, and Morris concluded within a degree of scientific certainty that DeLosSantos was the source of the blood found on the broken window. After hearing this evidence, the district court found DeLosSantos guilty of burglary of a habitation. This appeal followed.

### Sufficiency of the evidence

In his first issue, DeLosSantos contends that insufficient evidence supports the trial court's judgment that he committed burglary of a habitation. In reviewing the sufficiency of the evidence supporting a criminal conviction, we must decide whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard of review applies to cases involving both direct and circumstantial evidence. *Isassi*, 330 S.W.3d at 638. We review all the evidence in the light most favorable to the verdict and must assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Id*. Each fact need not point directly and independently to the

3

guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). The sufficiency of the evidence is to be measured by the elements of the offense as defined by the hypothetically-correct jury charge, which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This standard applies to both jury and bench trials. *Id.*

The elements of the offense of burglary of a habitation are set forth in section 30.02(a) of the Penal Code. Tex. Penal Code § 30.02(a). A person commits the offense of burglary of a habitation if, without the owner's consent, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

*Id.* The burglary statute also states that "enter" means "to intrude . . . any part of the body." *Id.* § 30.02(b). DeLosSantos was indicted for burglary of a habitation under two theories—"with intent to commit theft" or "attempted to commit or committed theft." *See id.* § 30.02(a)(1), (3). We begin by considering the theory of burglary committed with "intent to commit theft," which is dispositive of DeLosSantos's first issue. *See* Tex. Penal Code § 30.02(a)(1).

4

DeLosSantos challenges his conviction for burglary of a habitation by arguing that there was insufficient evidence to prove he had the specific intent to commit theft. He argues that because the incident occurred during the day, there is no presumption of intent to commit theft. *See Solis v. State*, 589 S.W.2d 444, 446 (Tex. Crim. App. 1979) (noting presumption of intent to commit theft applies to defendant's attempted entry into home at night). He also contends that the evidence viewed in the light most favorable to the verdict shows only that he: (1) broke a single pane of the louvered window and bent, but did not break, the window frame; (2) pushed the window screen off the railing and into the residence; and (3) pushed in the curtain to the kitchen window as his arm reached inside the window. He further asserts that the distance between this window and the door was greater than arms-length and that there were no objects near the window for him to have stolen. Additionally, he contends there was no evidence that the screwdriver in his pocket was linked to the burglary or that the car Officer Moore pulled over was the one Hill's neighbor had seen DeLosSantos exiting. DeLosSantos further argues that his physical appearance when the police found him at the gas station was not unusual or incriminating. In sum, DeLosSantos maintains that the premise that he broke the window and attempted to enter Hill's residence with knowledge of its contents is insufficient to prove the requisite element of his specific intent to commit theft.

When reviewing the sufficiency of the evidence, we look to events occurring before, during, and after the commission of the offense and may rely on the defendant's actions showing "an understanding and common design to do the prohibited act." *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). Intent to commit theft may be inferred from the circumstances. *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982). Here, the district court heard Hill's testimony establishing that DeLosSantos had previously been inside her residence and therefore

5

knew that it contained valuable property. Hernandez's testimony places DeLosSantos at the crime scene exiting a vehicle, knocking on the door to Hill's residence, breaking a window, and reaching inside. Patrol-car footage of the location shows the broken window, and DNA analysis of a blood stain on the window was consistent with DeLosSantos's DNA profile. After DeLosSantos was unsuccessful at opening Hill's door from the inside, he departed the scene of the crime, and Officer Watkins found him a short distance away. Although there is no direct evidence DeLosSantos used the screwdriver in his attempt to break into Hill's home, the item was nonetheless found on him shortly after the events. *See Danzi v. State*, 101 S.W.3d 786, 789 (Tex. App.—El Paso 2003, pet. ref'd) (stating that concealment of instruments that can be used to commit burglary is evidence of intent to use them to commit burglary); *see also Gomez v. State*, 13-13-00084-CR, 2013 WL 3326032, at *3 (Tex. App.—Corpus Christi June 27, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that mere possession of two screwdrivers, "items generally considered burglary tools," was circumstance indicating guilt of burglary). Here, the cumulative force of the incriminating evidence and circumstances, including DeLosSantos's actions, tend to show "an understanding and common design" to commit theft, thereby supporting his conviction for burglary of a habitation. *See Wirth*, 361 S.W.3d at 697; *see also Hooper*, 214 S.W.3d at 13. Further, DeLosSantos put forth no evidence at trial to rebut the inference of his intent arising from this circumstantial evidence. *See Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. 1981) (noting that "[w]hen the required intent can be inferred from the act itself, and the defendant puts on no evidence to rebut the inference, intent cannot be said to be a contested issue").

DeLosSantos relies on two cases to negate the evidence of his intent to commit theft, *Solis*, 589 S.W.2d at 446-47 and *McMullen v. State*, No. 12-12-00160-CR, 2013 WL 3788137, at *4

6

(Tex. App.—Tyler July 17, 2013, no pet.) (mem. op., not designated for publication). He compares his case to *Solis*, in which the court reversed a conviction for attempted burglary for insufficient evidence of intent when the evidence showed only that Solis removed a window screen from a house, took it to a second house, and left it on the lawn of the second house while he attempted to break into the second house. 589 S.W.2d at 446-47. The court noted that Solis did not take from the first house a purse that was "in plain view only a few feet from the window" and stated that although his removal of the screen was incriminating, his "inexplicable" behavior of doing nothing further at the first house after removing the screen left reasonable doubt about his criminal intent. *Id.* In contrast to Solis's questionable intent, DeLosSantos knocked on the door to Hill's residence, broke a window with his hand, attempted further entry through the adjacent door, and then departed after he failed to open the door. The break-in occurred only days after he had been in Hill's home, had helped her move and arrange valuable items inside, and had a disagreement with her. We conclude that the evidence in this record is distinguishable from that presented in *Solis* and sufficiently supports an inference of DeLosSantos's intent to commit theft.

DeLosSantos also contrasts his case from *McMullen*, in which several incriminating circumstances were held sufficient to support a finding of intent to commit theft. 2013 WL 3788137, at *4. Although *McMullen* contains additional facts not present here, it was the totality of the incriminating circumstances—including the defendant's presence near the crime scene a few weeks earlier and the absence of vehicles at the burglarized residence—that supported an inference of the defendant's intent to commit theft. *Id.* Similarly, the evidence that DeLosSantos had been at Hill's residence days earlier, that Hill's car was not parked at her home at the time of break-in, and that

7

DeLosSantos decided to knock on the front door before breaking the window supports a finding of DeLosSantos's intent to commit theft.

We conclude that the events occurring before, during, and after DeLosSantos's break-in provide sufficient evidence from which the district court could have found beyond a reasonable doubt that DeLosSantos entered into Hill's residence without her consent and with intent to commit theft. *See* Tex. Penal Code § 30.02(a); *Jackson*, 443 U.S. at 324; *Wirth*, 361 S.W.3d at 697; *Isassi*, 330 S.W.3d at 638. We overrule DeLosSantos's first issue.

### Objections to admission of backpack and t-shirt

In his second and third issues, DeLosSantos contends that the district court erroneously admitted the State's Exhibits 5 and 6—a backpack and a seemingly bloodied t-shirt—into evidence at trial. We review a court's decision regarding the admissibility of evidence using an abuse of discretion standard, upholding the ruling unless the decision is outside the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A court abuses its discretion by acting without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

The record shows that the court admitted State's Exhibits 5 and 6, which were found inside the vehicle that Officer Moore stopped near the crime scene. DeLosSantos notes that he objected to the relevancy of these exhibits, and that the State expressed an intent to link them to him during trial but did not. DeLosSantos insists that he was not required to make any further objection because the district court admitted the evidence unconditionally, i.e., it was not admitted subject to the introduction of other evidence under Texas Rule of Evidence 104(b). *See* Tex. R. Evid. 104(b).

8

All relevant evidence is admissible at trial. *See* Tex. R. Evid. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Tex. R. Evid. 401. Before DeLosSantos's objection, the district court heard Officer Moore's testimony stating that the backpack and t-shirt were found shortly after the burglary inside a vehicle that was near the crime scene and matched the description of a vehicle provided by Hernandez. In light of this evidence, the trial court did not abuse its discretion in unconditionally admitting State's Exhibits 5 and 6. Further, even if the exhibits had been conditionally admitted, DeLosSantos's failure to renew his original objection to the admissibility of this evidence at the conclusion of the prosecution's case would have waived his complaint. *See Fuller v. State*, 829 S.W.2d 191, 199 (Tex. Crim. App. 1992) (requiring objecting party to renew relevancy objection after all proof was submitted to preserve his objection on appeal).

Even assuming State's Exhibits 5 and 6 were improperly admitted, DeLosSantos must still show that their admission harmed him by affecting his substantial rights before he would be entitled to a reversal. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (noting that "substantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect'"). To make this determination, we review the entire record and calculate the likely influence of the error upon the verdict. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

Here, the backpack and shirt were mentioned a few times in passing but were not emphasized or extensively explored by the State during trial. Given that DeLosSantos's appeal

9

challenges only his intent to commit theft, the backpack and t-shirt seem of little weight to the district court's verdict. The State did not discuss either of the exhibits during closing, and there is substantial other evidence in this record pointing to DeLosSantos's guilt.

For the foregoing reasons, we conclude that the court did not abuse its discretion by admitting State's Exhibits 5 and 6 and that DeLosSantos waived any complaint about their admission by failing to renew his relevancy objection. Further, even if the exhibits were erroneously admitted, their admission did not affect DeLosSantos's substantial rights, and as such he is not entitled to reversal on this basis. We overrule DeLosSantos's second and third issues.

**CONCLUSION**

Having overruled all of DeLosSantos's appellate issues, we affirm the district court's judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 18, 2014

Do Not Publish

10