# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00268-CR

**Reynaldo Hernandez, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-12-203067, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Reynaldo Hernandez, Jr., was observed in a mall parking lot breaking into and driving off in a pick-up truck belonging to Jalaine Faulkenberry. After noticing a police officer following him, Hernandez attempted to evade the officer. Ultimately, Hernandez crashed the truck into another vehicle. The impact of the crash killed the driver of the other vehicle. After the collision, Hernandez was arrested and charged with murder and with theft of the truck. *See* Tex. Penal Code §§ 19.02 (governing crime of murder), 31.03 (setting out elements for offense of theft). This appeal relates to Hernandez's theft conviction.[1] The indictment contained two enhancement allegations for two prior felony convictions. At the end of the trial, the jury concluded that Hernandez was guilty,

---

[1] As mentioned above, Hernandez was also charged with murder, and both charges were tried together. At the conclusion of the trial, the jury found Hernandez guilty of murder and sentenced him to 55 years' imprisonment. In a separate opinion issued today, we have affirmed Hernandez's murder conviction. *See Hernandez v. State*, No. 03-13-177-CR (Tex. App.—Austin Aug. 14, 2014, no pet. h.) (mem. op., not designated for publication).

found the enhancement allegations to be true, and imposed a punishment of confinement for 20 years. Hernandez appeals his theft conviction. We will affirm the district court's judgment of conviction.

**DISCUSSION**

**The Evidence is Legally Sufficient**

In a single issue on appeal, Hernandez contends that the evidence is legally insufficient to support his theft conviction. An individual commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a). Under the Penal Code, appropriate means "to acquire or otherwise exercise control over property other than real property," *id.* § 31.01(4)(B), and is unlawful if "it is without the owner's effective consent," *id.* § 31.03(b)(1), and "deprive" is defined as "withhold[ing] property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner," *id.* § 31.01(2)(A).

In challenging his conviction, Hernandez does not deny that he took the truck from the mall parking lot without Faulkenberry's consent[2] or that he was driving the truck at the time of the collision.[3] However, he urges that the evidence is still insufficient because it failed to show that

---

[2] During the trial, Faulkenberry testified that she went to the mall on the day in question and that when she returned to the parking lot after finishing her shopping, she noticed that her truck was missing. Further, she explained that she had not given anyone permission to drive her truck and that she did not know Hernandez.

[3] In fact, during Hernandez's opening statement at trial, his counsel stated that "[w]e agree [Hernandez] stole that truck from Barton Creek Mall. We agree he sped to get away from the police. We agree he ran that red light. And we agree he caused the death of James Williford. What we don't agree on is that this is a murder." Similarly, during Hernandez's closing argument, his counsel stated that Hernandez was "guilty of theft. . . . Like I said, not contesting that. This was an

the owner of the truck had been deprived of its use or value. As support for this proposition, Hernandez notes that the State never asked Faulkenberry whether the truck was ever returned to her. In addition, although Hernandez admits that the truck was damaged during the collision, he contends that there was no evidence that the truck was not "recoverable or restored to its owner" and that no evidence was presented detailing the amount of the damage or setting out whether Faulkenberry received any money from her insurance company compensating her for the damage. Moreover, Hernandez asserts that the evidence shows that he abandoned the vehicle immediately after the collision. Accordingly, Hernandez contends that the deprivation element is not met because the evidence indicates that the truck "was taken for temporary purposes."[4]

At the outset, we note that the arguments proffered by Hernandez's counsel on appeal are best described as bordering on frivolous. *See McCoy v. Court of Appeals*, 486 U.S. 429 (1988). An appeal is considered frivolous when it "lacks any basis in law or fact," *id.* at 439 n.10, and frivolous arguments are those that "'cannot conceivably persuade the court,'" *id.* at 436 (quoting

---

opportunity. . . . He got the purse out of the car, found the key, and stole the car. So he is guilty of that."

In light of those statements, the State argues in its supplemental brief that Hernandez is "estopped from challenging the legal sufficiency of the evidence in this case." *See Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003) (explaining that party may be estopped from asserting claim that is inconsistent with his prior conduct); *Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.—Amarillo 1987, pet. ref'd) (stating that defendant could not argue that evidence was insufficient to show cause of death after admitting victim's cause of death). Given our resolution of Hernandez's first issue, we need not address this alternative basis for upholding Hernandez's conviction.

[4] As support for the idea that the deprivation element cannot be met when the evidence shows that a temporary deprivation was intended, Hernandez cites *Kiser v. State*, 150 S.W.2d 257 (Tex. Crim. App. 1941), and *Smith v. State*, 146 S.W. 547 (Tex. Crim. App. 1912). However, we believe that those cases are clearly distinguishable from the current case.

3

*United States v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985) (per curiam)). In fact, lawyers have "no duty, indeed no right, to pester a court with frivolous arguments." *Edwards*, 777 F.2d at 365.

As summarized above, when attacking the sufficiency of the evidence, Hernandez's counsel contends that the State failed to prove that Faulkenberry had been *deprived* of her property. However, the State was not required to prove actual deprivation and was instead only required to show that Hernandez *intended* to deprive Faulkenberry of her truck. *See* Tex. Penal Code § 31.03(a); *see also Rowland v. State*, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988) (explaining that "[w]hile evidence of actual deprivation may be evidence of intent to deprive, other evidence may also indicate whether intent to deprive exists"). Moreover, although the requisite intent "must exist at the *time of the taking*," it "can be inferred from the surrounding circumstances." *Mattiza v. State*, 801 S.W.2d 195, 197 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (emphasis added); *see Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (explaining that evidence must show that defendant intended to deprive owner of property at time that it was taken); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989) (stating that intent can be inferred from defendant's conduct or his actions). Furthermore, "[t]he fact that the deprivation later became temporary does not automatically mean that there was no intent to deprive permanently or for so long as to satisfy the statutory definition." *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981); *see also Rowland*, 744 S.W.2d at 612-13 (explaining that although vehicle was eventually returned to owner, defendant was still guilty of theft because, among other reasons, he was not individual who "returned the truck"); *Brown v. State*, No. 11-01-00334-CR, 2001 WL 32344903, at *3 (Tex. App.—Eastland Aug. 15, 2002, no pet.) (not designated for publication) (stating that jury could rationally have

4

determined that defendant intended to deprive owner when he took truck to evade police and abandoned it after wrecking it).

As will be more thoroughly explained below, the evidence in this case overwhelmingly establishes that Hernandez took Faulkenberry's truck without her permission, that he drove the truck out of the parking lot where it was parked, that he attempted to evade the police when he realized that they were following him by speeding and by driving erratically, that he ran a red light and crashed the truck into the vehicle of an innocent person who was following the law and was simply attempting to safely drive home after leaving a charity event raising money for a sick co-worker, that the innocent person suffered catastrophic injuries and died as a result of Hernandez's actions, that Hernandez continued his efforts to evade police by fleeing the scene of the accident on foot, and that Hernandez was caught running from a store near the scene. In light of this evidence, Hernandez's counsel's suggestion that the evidence is legally insufficient to show that Hernandez was guilty of theft because the evidence does not establish that Faulkenberry was sufficiently deprived of her property and because Hernandez (in his counsel's terms) "abandoned" the truck to the custody of the police ignores the evidence presented during the trial and ignores the latitude that the jury has in deciphering intent from that evidence. Considering the testimony given at trial as well as the numerous video recordings admitted into evidence chronicling Hernandez's criminal exploits, his counsel's argument could not conceivably persuade this Court to rule in his favor. *See McCoy*, 486 U.S. at 436 n.10, 439.

Even perfunctorily performing a typical legal-sufficiency analysis, which is not warranted under the circumstances, we easily reach the same conclusion. Under a legal-sufficiency

5

review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must keep in mind that it is the factfinder's responsibility to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, an appellate court must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). In addition, appellate courts should presume that any conflict among the inferences was resolved in favor of the conviction and should defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, Brian Cahill, who was a security guard for the shopping mall where Faulkenberry parked her truck, testified that he saw Hernandez and another individual drive around the mall parking lot and park next to a Range Rover. Further, Cahill stated that he saw the other individual attempt but fail to force his way into that vehicle. Then, Cahill related that he saw the pair drive to Faulkenberry's truck and observed Hernandez use a burglar's tool to break into the truck and remove a purse from inside. In addition, Cahill explained that after Hernandez removed the purse, he returned to the truck, started the truck, and drove the truck out of the parking lot. Moreover, during Cahill's testimony, a video of the incident in the parking lot was played for the jury.

In addition to Cahill's testimony regarding the events occurring in the parking lot, Officer Kyle Sargent testified about events taking place after Hernandez left the parking lot.

6

Specifically, he recalled that on the day in question he received a call alerting him about a vehicle theft at a shopping mall and providing him with a description of the offender as well as a description of and the license plate number for the stolen vehicle. Moreover, Sargent stated that on his way to the mall, he observed Hernandez driving the truck. Next, Sargent described how he pulled up behind the truck while it was stopped at a traffic light and how the truck took off "at a high rate of speed" when the light turned green and "cut over . . . to the right shoulder" from the left lane. Sargent also revealed that after he observed the erratic driving, he turned on his lights and siren and began pursuing the truck. Later, Sargent stated that he had to drive around "90 to 95 miles an hour" in order to keep up with Hernandez. In his testimony, Sargent explained that there was "a good amount of traffic" at that time and that Hernandez had to drive on the shoulder and run a red light in order to maintain his speed. Furthermore, Sargent testified that he temporarily lost track of the truck after getting a flat tire but that he continued driving on the flat and later saw the truck after Hernandez had crashed into another vehicle. Moreover, Sargent related that when he arrived at the crash site, various witnesses informed him that Hernandez had taken off on foot and had run into a nearby store. Finally, Sargent stated that he apprehended Hernandez after he fled the store. During Sargent's testimony, a video from his in-car camera was played for the jury, and the video chronicled the car chase. In addition, other videos were played for the jury, including footage from a security camera located near the intersection showing Hernandez run a red light and crash into another vehicle as well as footage of the aftermath of the crash from a police helicopter showing that the truck had been damaged, had been driven into a pole, and had been left in the parking lot of a convenience store. The helicopter video also shows the mangled remains of the vehicle that Hernandez crashed into.

7

Finally, Hernandez's wife, Linda Hernandez, also provided testimony regarding Hernandez's intent on the day in question. In particular, she stated that one of Hernandez's friends knocked on the door to their home that morning and said that Hernandez needed to go to "work." Further, she explained that although Hernandez was initially reluctant to go, he ultimately agreed to go with his friend. Later, Linda clarified that when she referred to Hernandez's "work," she meant "breaking into cars."

In light of the evidence above and the reasonable inferences that the jury was free to make from that evidence, we conclude without hesitation that the evidence is legally sufficient to show that Hernandez intended to deprive Faulkenberry of her truck. Not only could a hypothetical jury "have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, we find no evidence in this record that would rationally support a conclusion to the contrary. Accordingly, we overrule Hernandez's issue on appeal.

**Clerical Error in Judgment**

Although Hernandez does not raise this on appeal, we observe that the judgment of conviction contains a clerical error. As mentioned above, the indictment in this case had two enhancement allegations regarding two prior felony convictions. The judgment in this case states that Hernandez pleaded "not true" to the two enhancement allegations; however, the record reflects that Hernandez pleaded "true" to both allegations. This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment of conviction to reflect that Hernandez pleaded "true" to the enhancement allegations.

8

## CONCLUSION

Having modified the judgment to correct a clerical error and having overruled Hernandez's sole issue on appeal, we affirm the district court's judgment of conviction as modified.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:   August 14, 2014

Do Not Publish

9