

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## PD-1054-11

---

**RAYMOND WAIER WIRTH, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
FANNIN COUNTY**

---

*Womack, J., delivered the opinion of the unanimous Court.*

The appellant was convicted of the offense of theft of $20,000 or more but less than

$100,000.[1] The Sixth Court of Appeals held that the evidence was legally insufficient to support

the appellant's conviction and rendered a judgment of acquittal.[2] The State, viewing the Court of

Appeals's opinion as conflicting with the opinions of this court as well as the Texas Rules of

---

[1] TEX. PENAL CODE § 31.03(a).

[2] *Wirth v. State*, 342 S.W.3d 161 (Tex. App.–Texarkana 2011).

Appellate Procedure, filed a petition for discretionary review. We agree with the State that the Court of Appeals erred in its sufficiency analysis, and we shall reverse that Court's decision and reinstate the appellant's conviction.

## I. BACKGROUND

The appellant owned and operated a car-leasing business which acted as an intermediary between car dealerships and customers. In a typical transaction, after being approached by a customer interested in leasing a vehicle, the appellant's business would locate a vehicle, obtain approval of the interested lessee by a financing bank, arrange for the purchase of the vehicle, arrange for transfer of title to the bank, and assign the agreement to the financing bank. When an agreement had been reached, the business's general manager, James Rogers, would issue a sight draft to the car dealership, to be paid later out of the business's bank account.[3] Rogers testified that the appellant authorized him to issue drafts, but that he was not authorized to issue checks to cover the drafts.

In March of 2005, the appellant closed the business's bank accounts and withdrew the balances. The business ceased operations shortly thereafter, and in its wake, five car dealerships discovered that they possessed worthless drafts with combined face values of over $500,000.

---

[3] At trial, Rogers explained how sight drafts work:

> A draft is an envelope draft. It's similar to a check, and it's primarily a promissory note to pay, for lack of a better term. And what happens is, when you draft on a car, when the dealership gets that, they put the paperwork in that draft that shows the title goes to the funder, whether it be Bank of America or Wells Fargo. Whoever. They put all the paperwork in there and they send that to the bank for payment. And that's presented to the bank.

> The bank then calls – in this case, our company – and says, we have the draft presented at the bank, and then you send a check over to pay that draft. When the paperwork – when the car's been titled – shows to have been titled correctly and all of the paperwork in there is correct, then you pay for that. And that's – then the check goes to the dealer you bought the car from. The draft and copies of the paperwork come back from the dealership.

These dealerships made repeated attempts to contact the appellant, to no avail, and the business failed to pay any of the outstanding drafts. At trial, the bank's account manager testified that, in the year preceding the business's closing, she and the appellant had frequently spoken about the fact that the business's account did not always contain sufficient funds to honor the business's outstanding drafts.

The appellant was charged by indictment for the offense of theft over $200,000. The jury was charged to decide whether the appellant, pursuant to one scheme or continuing course of conduct, committed the offense of theft by intentionally or knowingly unlawfully appropriating property by bringing about transfers of automobile titles without the effective consent of the owners and with intent to deprive the owners of property. The jury was instructed that consent is not effective if it is induced by deception.[4] Deception was defined in the charge as:

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.[5]

The jury also was instructed on the law of parties:

> All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aides, or attempts to aid the other person to commit the offense.[6]

---

[4] See TEX. PENAL CODE § 31.01(3).

[5] See *id.*, § 31.01(1)(e).

[6] See *id.*, § 7.02.

The jury found the appellant guilty of the lesser-included offense of theft of $20,000 or more but less than $100,000. He appealed.

The Sixth Court of Appeals held that the evidence was factually insufficient to support the verdict,[7] pursuant to *Clewis v. State*.[8] At the time that the Court of Appeals considered this case, however, this Court had not issued its opinion in *Brooks v. State*,[9] in which we overruled *Clewis*. On the State's initial petition for discretionary review, we vacated the judgment of the Court of Appeals and remanded the case to that court for reconsideration pursuant to *Brooks*.[10] On remand, the Court of Appeals held that the evidence was legally insufficient to support the appellant's conviction and rendered a judgment of acquittal.[11] Specifically, the court found legally insufficient evidence "to support the jury's conclusion that [the appellant] intentionally or knowingly issued the drafts without the intent to honor them," and determined that evidence of the appellant's extraneous bad acts did not sufficiently indicate criminal intent.[12]

Now, in two overlapping grounds for review, the State argues that the Court of Appeals erred in reversing the appellant's theft conviction. In its first ground for review, the State argues that the Court of Appeals erred in "refusing to address the issues raised in the State's brief." In its second ground for review, the State argues that the Court of Appeals "effectively ignore[d]" our holding in *Brooks* by reviewing the sufficiency of the evidence "without considering all of the

---

[7] *Wirth v. State*, 296 S.W.3d 895, 897 (Tex. App.–Texarkana 2009).

[8] 922 S.W.2d 126 (Tex. Cr. App. 1996).

[9] 323 S.W.3d 893 (Tex. Cr. App. 2010).

[10] *Wirth v. State*, 327 S.W.3d 164 (Tex. Cr. App. 2010).

[11] *Wirth v. State*, 342 S.W.3d 161 (Tex. App.–Texarkana 2011).

[12] *Id*., at 171.

evidence or according any deference to the jury." Specifically, the State claims that the Court of Appeals "selectively emphasized snippets of the record that ostensibly favored its holding" while "ignor[ing] controverting testimony" and "mischaracteriz[ing] testimony supporting [the] conviction."

In response, the appellant contends that the "reviewing court simply did not agree with the representations of the state," and that the record is "simply devoid of any evidence to suggest [the appellant] participated in any way in this [*sic*] transactions at the time they occurred." The appellant dismisses the State's argument as being "silly and suggest[ing] the State did not carefully review the opinion issued" by the Court of Appeals. Finally, the appellant defends the Court of Appeals's opinion as "fair, thoughtful, and complete," and as the product of a court unwilling "to become entranced by the State's repetitious and inaccurate chant."

## II. DISCUSSION

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property.[13] A claim of theft made in connection with a contract, however, requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. In that circumstance, the State must prove that the appropriation was a result of a false pretext, or fraud.[14] Moreover, the evidence must show that the accused intended to deprive the owner of the property at the time the property was taken.[15] In reviewing

---

[13] TEX. PENAL CODE § 31.03(a).

[14] *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App.–Texarkana 1998, pet. ref'd) (*citing Wilson v. State*, 663 S.W.2d 834 (Tex. Cr. App. 1984); *Peterson v. State*, 645 S.W.2d 807 (Tex. Cr. App. 1983)).

[15] *See Wilson v. State*, 663 S.W.2d 834, 836-37 (Tex. Cr. App. 1984) ("Relevant intent to deprive the owner of property is the accused's intent at the time of the taking.").

the sufficiency of the evidence, though, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act."[16]

We agree with the State that the Court of Appeals did not properly defer to the jury's verdict. While the evidence in this case is not overwhelming, neither is it so weak as to require an acquittal; it is well settled that the reviewing court must view the evidence in the light most favorable to the verdict.[17]

There is no evidence that the appellant directly signed any drafts. The jury was charged on the law of parties,[18] however, and there was sufficient evidence to support a finding that the appellant authorized the transfer of title of automobiles knowing that he would be unable or unwilling to satisfy the issued drafts. As the Court of Appeals acknowledged, the appellant was the owner and controlling partner of the business, he controlled all financial aspects of the business, he alone conducted banking on behalf of the business, he alone was notified when money was wired into the business's bank account, and he was solely responsible for paying due drafts. Furthermore, there were numerous occurrences of insufficient funds in the year preceding the close of the business, the appellant requested the withdrawal of all funds despite knowing of outstanding drafts, the appellant bounced checks to cover dishonored drafts, and (perhaps most importantly) the appellant authorized the general manager (Rogers) to sign drafts, but not to sign

---

[16] *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Cr. App. 2004) (*citing Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Cr. App. 1985) and *Thompson v. State*, 697 S.W.2d 413, 416 (Tex. Cr. App. 1985)).

[17] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[18] *See* TEX. PENAL CODE § 7.02.

checks to satisfy the drafts.[19]

The evidence in this case is almost entirely circumstantial. Accordingly, we agree with the Court of Appeals to the extent that the evidence here *could* merely be symptoms of a "previously successful business [falling] off" and "scrambl[ing] for money from … any available source." But we are not the fact finder, and neither was the Court of Appeals.[20] The jury inferred from this circumstantial evidence that the appellant authorized Rogers to issue drafts to car dealerships knowing that he would never satisfy them. This was not a determination so outrageous that no rational trier of fact could agree. The Court of Appeals should not have found the evidence to be legally insufficient.[21]

### III. CONCLUSION

Our review of the record reveals legally sufficient evidence to support the jury's verdict of guilt. We reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.

Delivered March 21, 2012.
Publish.

---

[19] Although the Court of Appeals's opinion says that Rogers was authorized to write checks (342 S.W.3d, at 169), Rogers testified that he was never authorized to issue checks to cover drafts.

[20] *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) ("[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." (citing *Jackson*, 443 U.S. 307)).

[21] *See ibid.* ("Because rational people can sometimes disagree, the inevitable consequence of this settled law [that a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury] is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").