**Opinion issued June 12, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00343-CR**

———————————

**JACQUELINE FREEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1280764**

---

**MEMORANDUM OPINION**

Appellant, Jacqueline Freeman, was charged by indictment with aggregate theft in an amount over $200,000.[1]  The jury found her guilty, and the trial court assessed punishment at 18 years' confinement.  In one issue, Appellant argues the

---

[1]  *See* TEX. PENAL CODE ANN. §§ 31.03(a), (e)(7), 31.09 (Vernon 2011).

evidence is insufficient to establish she participated in the theft individually or as a party to the offense.

We affirm.

## Background

In September 2001, J & T Behavioral Health, Inc. applied to be a Medicaid provider for child and family counseling services. In the application, two companies were identified: J & T Behavioral Health and Freeman Kids Academy, Inc. The application included articles of incorporation for both companies. In one part of the application, the provider name is identified as J & T Behavioral Health doing business as Freeman Kids Academy. In another part of the application, the provider name is identified as Freeman Kids Academy doing business as J & T Behavioral Health.

The main document in the application is the contract between the Texas Department of Health and the provider. The provider in the contract is identified as J & T Behavioral Health. Both Appellant and her husband signed this contract. In the contract, J & T Behavioral Health agreed to comply with all laws and regulations governing Medicaid. It also agreed to be "responsible for ensuring that employees or agents acting on behalf of [J & T Behavioral Health] comply with all of the requirements of . . . all state and federal laws and amendments governing and regulating Medicaid." J & T Behavioral Health also agreed to keep all records

2

necessary to establish that services billed to Medicaid were actually performed. These records had to be maintained for a period of five years from the date of service.

Another one of the forms in the application is a "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion for Covered Contracts." Appellant signed this form as an authorized representative of Freeman Kids Academy. Another form contains provider information about officers, directors, and corporate owners of the provider. Appellant signed this form as the representative of Freeman Kids Academy, doing business as J & T Behavioral Health.

The application also included a resolution from Freeman Kids Academy. The resolution established that Appellant was the secretary for the board of directors. The resolution authorized Appellant to execute contracts with the Texas Department of Health and to implement, maintain, amend, and renew the contract. The resolution was signed by Appellant and notarized.

J & T Behavioral Health was approved to be a Medicaid provider. Some time in 2006, the Texas Office of the Attorney General, Medicaid Fraud Control Unit initiated an investigation into J & T Behavioral Health. Investigators requested the files for 425 patients for whom J & T Behavioral Health had billed. Appellant and her husband provided files for 22 patients. Investigators ultimately

determined that, of over $520,000 that was paid to J & T Behavioral Health, $433,963.78 was due to fraudulent billing. All of the money received from Medicaid was deposited into and subsequently withdrawn from a bank account to which only Appellant and her husband had access. The account was an operational account for J & T Behavioral Health. Over $16,000 of that money was paid directly to Appellant, $9,000 of which was paid in one lump sum. $46,347.58 was paid to Accredited Home Lenders, and $22,372 was paid to Mortgage JIT.

One of the people to testify at trial was John Wells. Wells is a licensed therapist and had done work for J & T Behavioral Health, though not as much as billed by the company. Wells testified that, when he went to the premises for J & T Behavioral Health, he saw that Appellant "pretty much ran the whole . . . operation there." Another therapist, Bobby Barksdale, testified that she saw Appellant working at J & T Behavioral Health.

## Sufficiency of the Evidence

In her sole issue, Appellant argues the evidence is insufficient to establish she participated in the theft individually or as a party to the offense.

### A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013)

(citing *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts

5

in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton,* 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State,* 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B. Analysis

"A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon 2011). In the context of a contractual relationship, the State establishes theft by proving "that the appropriation was a result of a false pretext, or fraud." *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

In this case, J & T Behavioral Health was the party that contracted with the Texas Department of Health. Based on this, Appellant argues there is no proof that she committed theft, either individually or as a party to the offense. We disagree. "An individual is criminally responsible for conduct that he performs in the name of or [o]n behalf of a corporation or association to the same extent as if the conduct

were performed in his own name or behalf." TEX. PENAL CODE ANN. § 7.23(a) (Vernon 2011). A person also bears criminal responsibility for the conduct of another if, "having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense." TEX. PENAL CODE ANN. § 7.02(a)(3) (Vernon 2011).[2]

In the application, Appellant and her husband referred to J & T Behavioral Health and Freeman Kids Academy as one entity, each doing business as the other. The board of directors for Freeman Kids Academmy appointed Appellant as the representative to contract with the Texas Department of Health and to implement, maintain, amend, and renew the contract.

Both Appellant and her husband signed the contract with the Texas Department of Health. In the contract, J & T Behavioral Health agreed to comply with all laws and regulations governing Medicaid. It also agreed to be "responsible for ensuring that employees or agents acting on behalf of [J & T Behavioral Health] comply with all of the requirements of . . . all state and federal laws and amendments governing and regulating Medicaid." J & T Behavioral

---

[2] The jury charge did not include these instructions on criminal responsibility. But we review the sufficiency of the evidence based on a hypothetically correct jury charge, not the charge actually submitted. *See Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

7

Health also agreed to keep all records necessary to establish that services billed to Medicaid were actually performed. These records had to be maintained for a period of five years from the date of service.

The evidence establishes that over 80% of the invoices submitted for Medicaid reimbursement were fraudulent. In all, $433,963.78 was fraudulently billed and paid. All of the money received from Medicaid was deposited into and subsequently withdrawn from bank accounts to which only Appellant and her husband had access. The account was an operational account for J & T Behavioral Health. Over $16,000 of that money was paid directly to Appellant, $9,000 of which was paid in one lump sum. $46,347.58 was paid to Accredited Home Lenders, and $22,372 was paid to Mortgage JIT. Wells, one of the therapists that provided some Medicaid services on behalf of J & T Behavioral Health, testified that Appellant "pretty much ran the whole . . . operation there."

By appointment of Freeman Kids Academy's board of directors and by contractual agreement with the Texas Department of Health, Appellant individually accepted responsibility to be a provider for Medicaid services. As a part of this responsibility, Appellant was responsible for ensuring that her employees and agents were not submitting fraudulent billing and receiving fraudulent payments. Despite this, fraudulent bills were submitted and fraudulent payments were received. All this occurred while Appellant was reported to be

8

running the whole operation. The fraudulently obtained funds were deposited into and withdrawn from an account controlled exclusively by Appellant and her husband and she personally obtained $16,000 of these funds. Even if she did not submit the fraudulent billing herself, Appellant had a legal responsibility to ensure the bills were not submitted. *See* TEX. PENAL CODE ANN. § 7.02(a)(3). Instead, she received the money into an account that she controlled and then withdrew the funds. We hold there is sufficient evidence in the record to support the determination that Appellant participated in the theft individually or as a party to the offense.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).