**Opinion issued October 9, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-13-00342-CR**

_____

**THOMAS FREEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1280765**

---

**MEMORANDUM OPINION**

Appellant, Thomas Freeman, was charged by indictment with aggregate theft in an amount over $200,000.[1] The jury found him guilty, and the trial court assessed punishment at 18 years' confinement. In three issues, Appellant argues

---

[1]  *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(7) (Vernon Supp. 2014), § 31.09 (Vernon 2011).

(1) the evidence is insufficient to establish he participated in the theft individually or as a party to the offense, (2) the sentence in the judgment does not comport with the sentence rendered, and (3) the judgment incorrectly reflects that the jury assessed punishment.

We affirm.

## Background

In September 2001, J & T Behavioral Health, Inc. applied to be a Medicaid provider for child and family counseling services. In the application, two companies were identified: J & T Behavioral Health and Freeman Kids Academy, Inc. The application included articles of incorporation for both companies. In one part of the application, the provider name is identified as J & T Behavioral Health doing business as Freeman Kids Academy. In another part of the application, the provider name is identified as Freeman Kids Academy doing business as J & T Behavioral Health. Appellant signed the application to become a Medicaid provider on behalf of J & T Behavioral Health. The articles of incorporation for J & T Behavioral Health and for Freeman Kids Academy both identify Appellant as the sole director for each company.

The main document in the application is the contract between the Texas Department of Health and the provider. The provider in the contract is identified as J & T Behavioral Health. Both Appellant and his wife signed the contract. In

2

the contract, J & T Behavioral Health agreed to comply with all laws and regulations governing Medicaid. It also agreed to be "responsible for ensuring that employees or agents acting on behalf of [J & T Behavioral Health] comply with all of the requirements of . . . all state and federal laws and amendments governing and regulating Medicaid." J & T Behavioral Health also agreed to keep all records necessary to establish that services billed to Medicaid were actually performed. These records had to be maintained for a period of five years from the date of service.

J & T Behavioral Health was approved to be a Medicaid provider. Some time in 2006, the Texas Office of the Attorney General, Medicaid Fraud Control Unit, initiated an investigation into J & T Behavioral Health. Investigators requested the files for 425 patients for which J & T Behavioral Health had billed. Appellant and her husband provided files for 22 patients. Investigators ultimately determined that, of over $520,000 that was paid to J & T Behavioral Health, $433,963.78 was due to fraudulent billing. All of the money received from Medicaid was deposited into and subsequently withdrawn from a bank account to which only Appellant and his wife had access. The account was an operational account for J & T Behavioral Health. From that account, $46,347.58 was paid to Accredited Home Lenders, and $22,372 was paid to Mortgage JIT.

The State also introduced into evidence an application to become a Medicaid provider of psychology counseling from Freda J. Smith. The application was notarized by Appellant. Smith testified at trial, however, that she applied with J & T Behavioral Health to be a therapist. Part of her application packet was the application to become a Medicaid provider. She filled out the application but never heard back from J & T Behavioral Health and never performed any services through them. Records showed that J & T Behavioral Health billed Medicaid $28,384.22 for services it claimed that Smith had provided. Smith denied providing any of the alleged services.

Appellant testified at trial. He asserted repeatedly during his testimony that he was the owner of J & T Behavioral Health, that he alone was responsible for the actions of the company, that he bore the liability for the contract with the Texas Department of Health, and that he took full responsibility for any harm that was caused to anyone.

## Sufficiency of the Evidence

In his first issue, Appellant argues the evidence is insufficient to establish he participated in the theft individually or as a party to the offense.

### A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single

4

standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim.

5

App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton,* 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State,* 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B. Analysis

"A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2014). In the context of a contractual relationship, the State establishes theft by proving "that the appropriation was a result of a false pretext, or fraud." *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

In this case, J & T Behavioral Health was the party that contracted with the Texas Department of Health. Appellant argues there is no proof that he committed theft, either individually or as a party to the offense. We disagree. "An individual is criminally responsible for conduct that he performs in the name of or [o]n behalf

6

of a corporation or association to the same extent as if the conduct were performed in his own name or behalf." TEX. PENAL CODE ANN. § 7.23(a) (Vernon 2011). A person also bears criminal responsibility for the conduct of another if, "having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense." TEX. PENAL CODE ANN. § 7.02(a)(3) (Vernon 2011).[2]

In their application for J & T Behavioral Health to become a Medicaid provider, Appellant and his wife referred to J & T Behavioral Health and Freeman Kids Academy as one entity, each doing business as the other. Appellant signed the application to become a Medicaid provider on behalf of J & T Behavioral Health. The articles of incorporation for J & T Behavioral Health and for Freeman Kids Academy both identify Appellant as the sole director for each company.

Both Appellant and his wife signed the contract with the Texas Department of Health. In the contract, J & T Behavioral Health agreed to comply with all laws and regulations governing Medicaid. It also agreed to be "responsible for ensuring that employees or agents acting on behalf of [J & T Behavioral Health] comply with all of the requirements of . . . all state and federal laws and amendments

---

[2] The jury charge did not include these instructions on criminal responsibility. But we review the sufficiency of the evidence based on a hypothetically correct jury charge, not the charge actually submitted. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

governing and regulating Medicaid." J & T Behavioral Health also agreed to keep all records necessary to establish that services billed to Medicaid were actually performed. These records had to be maintained for a period of five years from the date of service.

The evidence establishes that over 80% of the invoices submitted for Medicaid reimbursement were fraudulent. In all, $433,963.78 was fraudulently billed and paid. All of the money received from Medicaid was deposited into and subsequently withdrawn from bank accounts that only Appellant and his wife had access to. The account was an operational account for J & T Behavioral Health. From that account, $46,347.58 was paid to Accredited Home Lenders, and $22,372 was paid to Mortgage JIT.

The State also presented testimony from Freda J. Smith. Smith testified at trial, however, that she applied with J & T Behavioral Health to be a therapist. Her job application packet included an application to become a Medicaid provider. She filled out the application but never heard back from J & T Behavioral Health and never performed any services through them. Nevertheless, J & T Behavioral Health submitted the application to become a Medicaid provider of psychology counseling on her behalf. Appellant notarized the application. Records showed

that J & T Behavioral Health billed Medicaid $28,384.22 for services it claimed that Smith had provided. Smith denied providing any of the alleged services.[3]

When Appellant signed the application for J & T Behavioral Health to be a Medicaid provider, Appellant agreed to be responsible for ensuring that his employees and agents were not submitting fraudulent billing and receiving fraudulent payments. Despite this, fraudulent bills were submitted and fraudulent payments were received. The fraudulently obtained funds were deposited into and withdrawn from an account controlled exclusively by Appellant and his wife. Even if he did not submit the fraudulent billing himself, Appellant had a legal responsibility to ensure the bills were not submitted. *See* PENAL § 7.02(a)(3). Instead, he received the money into an account that he controlled and then withdrew the funds.

Furthermore, Appellant testified at trial. He asserted repeatedly during his testimony that he was the owner of J & T Behavioral Health, that he alone was responsible for the actions of the company, that he bore the liability for the contract with the Texas Department of Health, and that he took full responsibility for any harm that was caused to anyone. We hold there is sufficient evidence in the record

---

[3]    In total, the State presented the testimony of three parents and four service providers to establish that J & T Behavioral Health billed for over $200,000 of services that were not provided to or provided by the person identified.

to support the jury's determination that Appellant participated in the theft individually or as a party to the offense.

We overrule Appellant's first issue.

**Errors in Judgment**

In his third issue, Appellant argues that the judgment incorrectly states that the jury assessed punishment. In his second issue, Appellant argues that the sentence in the judgment does not comport with the sentence rendered.

The reporter's record indicates that the trial court, in its oral pronouncement of judgment, assessed two different punishments for Appellant. The trial court ordered that Appellant be sentenced to 18 years' confinement and that Appellant be sentenced to 25 years' confinement. There was no indication in the record of whether the sentence of 25 years' confinement was an intentional change or an inadvertent misstatement. The judgment included in the record at the start of this appeal indicated that Appellant's sentence was 25 years' confinement.

Courts of appeals are prohibited from affirming or reversing a judgment if an action by the trial court "prevents the proper presentation of a case to the court of appeals" if that action can be corrected by the trial court. TEX. R. APP. P. 44.4(a). Accordingly, we abated the appeal and remanded the case to the trial court, requesting a clarification of whether the trial court intended to sentence Appellant to 18 or 25 years' confinement.

During the abatement, the trial court issued a judgment nunc pro tunc, identifying the assessed punishment as 18 years' confinement. The judgment nunc pro tunc also identified that the trial court assessed punishment. Accordingly, we hold that Appellant's second and third issues are now moot. We overrule Appellant's second and third issues.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).