**Modify Judgment, Affirm in Part, Reverse and Remand in Part; Opinion
Filed August 31, 2020**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00307-CR

**KEVIN NEAL KISSIRE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-83135-2017**

## MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Pedersen, III

Appellant Kevin Kissire was charged with the offense of theft in an amount

between $30,000 and $150,000, a third-degree felony. After a jury found him guilty

as charged, the trial court assessed a punishment of eight years' confinement,

probated for five years. In three issues on appeal, appellant challenges the legal

sufficiency of the evidence to prove his intent to deprive the complainant of his

property and to prove the minimum necessary amount for a third-degree felony. He

also contends the trial court erroneously admitted extraneous evidence. We modify

the judgment, we affirm the conviction as set forth in the modified judgment, and we remand the case for a new trial on punishment only.

## I. Background

Appellant was the owner of Standard Steel, a company that brokered the design and purchase of steel buildings from manufacturers. At trial, Jaime Fernandez testified that in 2015, he began thinking about building a showroom for his pool business. While he was still considering what type of building to construct, one of his landscaping clients, Pastor E.G. Roberts, told Fernandez that he was going to use appellant to build a steel building for his church. A few weeks later, Roberts called Fernandez and invited him to join Roberts and some of his church board members for a tour of one of appellant's steel buildings, a church in Rockwall. Appellant gave the group a tour of several of his buildings.

Several months later, Fernandez contacted appellant to get a quote on what it would cost to build a steel building for his showroom. During several subsequent conversations, appellant assured Fernandez that he would provide blueprints, obtain permits, build the foundation, furnish the metal framing, and erect the building. Fernandez understood that he would not receive his building until a contract was signed and the deposit was paid in full.

Initially, Fernandez was reluctant to sign a purchase agreement because he was not ready to pay the deposit amount requested by appellant. Also, Fernandez was dissatisfied with appellant's initial drawings of the proposed building. Appellant

–2–

reassured Fernandez that changes to the building design could be made later, and he pressured Fernandez to sign the agreement before the price of steel increased. Appellant told Fernandez he could "lock in" the price of steel with a partial payment toward the deposit. On September 29, 2016, Fernandez signed a purchase agreement and paid appellant $18,000 toward the agreed $36,245 deposit. Several weeks later, Fernandez requested that specific changes be made to the building design. Appellant advised Fernandez that the changes would increase the deposit amount by $4,178. Fernandez could not remember if he signed a change order, but he did remember paying the additional $4,178.

In November 2016, appellant told Fernandez the price of steel would be going up. He said that to "lock in" the price of steel, Fernandez had to make another payment toward the deposit. Fernandez offered to pay another $7,500. When appellant agreed that amount would suffice, Fernandez gave him a check for $7,500.

In December 2016, appellant contacted Fernandez about paying the remainder of the deposit. Although appellant had yet to provide Fernandez with blueprints, he told Fernandez that his building would be delivered on January 15, 2017. Fernandez insisted appellant come to his property in Wylie, Texas to pick up the check. Fernandez was concerned that appellant had never been to the building site, and Fernandez expected him to take measurements. Instead, appellant sent Jason White, his project coordinator, to Fernandez's building site. White did not take measurements; he just picked up Fernandez's check for $14,800.

Fernandez's building was not delivered in January. When Fernandez called appellant to inquire about his building, appellant's phone had been disconnected. Fernandez then called White, the project coordinator, but he did not answer his phone. Fernandez drove to appellant's business address but found no business there. Fernandez located a home address for appellant but when he arrived at the house, he discovered it was an empty rental house. Fernandez testified that his assistant found posts and photographs on Facebook indicating that appellant was in the Philippines.

Wylie Police Department Detective Brian Porter was assigned to investigate Fernandez's complaint. He reviewed public records to determine that appellant was the owner of Standard Steel. He knew that Fernandez's three checks had been deposited at American National Business Bank so he subpoenaed Standard Steel's bank account records from the bank. Porter testified that although the bank account was a business account, many of the payments made from that account were for personal expenses such as gym membership charges, I-Tunes charges, and restaurant charges. He also saw that significant sums had been wire transferred overseas.

Porter explained that he searched for appellant's name on Facebook and ultimately found a woman by the name of JeanNylyn Jabil Kissire. He found photos of appellant on JeanNylyn Jabil Kissire's Facebook page. Porter testified that at least one of the wire transfers from the Standard Steel account had transferred money to JeanNylyn Jabil Kissire. He noted that by January 2017, no money remained in the Standard Steel bank account and in fact, it had been overdrawn by over $7,500.

–4–

Porter testified that he also interviewed Roberts, and searched Standard Steel's bank records for evidence with respect to deposits made by Roberts.

Appellant testified in his own defense. He and his ex-wife started Standard Steel in 2000. Most of the company's business was generated through internet leads from the company's websites. Standard Steel had a number of profitable years. In 2015, however, the company was having difficulties and appellant was forced to cut overhead. He closed his Rockwall office and laid off most of his employees. By 2016, he and Jason White, his project coordinator, were Standard Steel's only employees. Appellant worked out of his home office.

In April 2016, about the time that appellant began negotiating the building sale to Fernandez, appellant met a Filipino woman online. Several months later, he traveled to the Philippines to meet JeanNylyn Jabil in person. While still in the Philippines, an acquaintance suggested that he open a call center there. He returned home to the United States about a month later, but quickly scheduled a second trip to the Philippines to investigate the possibility of opening a call center there. He returned to the Philippines mid-October. Before leaving the United States, appellant wired money from his Standard Steel account to Jabil to cover food and other expenses. Appellant acknowledged that even before that wire transfer, he used the business account for personal purchases, such as his airplane tickets to the Philippines.

During this second trip, appellant decided to move to the Philippines to open a call center there to rejuvenate his business back home. When appellant returned to Texas two weeks later, he and White packed his belongings and moved them into storage. He forwarded his mail to his mother's address in Las Vegas, Nevada. He again wire transferred money from the Standard Steel bank account to Jabil, and flew back to the Philippines on December 2, 2016, leaving White in charge of Standard Steel.

During his first two trips to the Philippines, appellant continued to pay White's base salary. In late October or early November, appellant stopped paying White's base salary, and White agreed to work part-time for commission only. Appellant had limited phone service in the Philippines, so he communicated with White through Messenger. He testified that he expected White to deal with Fernandez because he would make money from the job if it were completed.

Appellant was unable to open his own call center in the Philippines—it was too expensive. And he discovered that, as a foreign national, he was restricted from renting callers in an established call center. He and Jabil got married; however, with no income, he found himself stranded in the Philippines and unable to return to the United States. Finally his brother sent him money so he could return home.

Appellant described his meetings and negotiations with Fernandez. He admitted receiving Fernandez's partial payments toward the amount of the deposit requested. However, according to appellant, Fernandez asked that changes be made

to the design of his building but failed to sign the change order. Without a signed change order, appellant would not have ordered blueprints for Fernandez's building. Appellant claimed he intended to deliver a building to Fernandez, and he claimed he would have put the building into production if Fernandez had signed the change order and the release for production. However, appellant admitted that once he was finally back in the United States, he never contacted Fernandez about completing his building. And he admitted that he never returned any of the money Fernandez paid toward the deposit.

The jury convicted appellant of theft by deception of more than $30,000 but less than $150,000, a third-degree felony. The trial court sentenced appellant to eight years in prison, probated for five years. Appellant timely filed this appeal.

## II. Discussion

### A. Intent to Deceive

In his first issue, appellant claims that a breach of contract does not amount to theft and that the State failed to prove that he intended to deceive Fernandez when he took his money. In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). This standard of review allows a jury to resolve fact issues and to draw reasonable inferences from the evidence. *Jackson*,

443 U.S. at 319; *see Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). With respect to the testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 319; *see Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). This appropriation of property is unlawful if it is done without the owner's effective consent. *Id*. § 31.03(b)(1). Consent is not effective if it is induced by deception. *Id*. § 31.01(3)(A). "Deception" in the context of this case means:

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*Id*. §31.01(1)(E). Viewing the evidence in the light most favorable to the verdict, we must determine whether any rational trier of fact could have found the essential

–8–

elements of the offense of theft as so defined beyond a reasonable doubt. *Johnson*, 560 S.W.3d at 226.

In a theft case arising from a contract, the State is required to prove that the defendant intended or knew that he would not perform his obligations at the time money changed hands. *See Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). "A contractor accused of theft may not be convicted of that offense on the theory that he acquired a down payment from his customer by deception if there is no reason to doubt from the evidence that he had every expectation at the time that the money changed hands of fulfilling his contractual obligation; at the time of the down payment, the customer paid voluntarily, and the accused neither intended nor knew he would not perform." *Taylor*, 450 S.W.3d at 536 (citing *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. 1982)). However, a contractor may still be found guilty of theft if—at some point after formation of the contract—he forms the mens rea to deprive and "appropriates *additional* property by deception; that is, he induces his customer to make further payment on the contract while no longer intending to perform, or at least knowing that he will not." *Id*. at 537 (citing *Ehrhardt v. State*, 334 S.W.3d 849, 856 (Tex. App.—Texarkana 2011, pet. ref'd)). In reviewing the sufficiency of the evidence, we consider events occurring before, during and after the commission of the offense and may rely on the defendant's actions that show an understanding and common design to do the prohibited act. *Wirth*, 361 S.W.3d at 697. Intent may also

be inferred from proof that the defendant engaged in other similar, recent transactions. PENAL § 31.03(c)(1); *see Johnson*, 560 S.W.3d at 227.

Appellant argues that the evidence does not show that he did not intend to fulfill his contractual obligations at the time Fernandez made his deposit payments. However, the evidence reveals that appellant needed Fernandez's deposit payments to fund his trips and extended stay in the Philippines. Upon appellant's return from his first trip to the Philippines, he pressured Fernandez to sign the purchase agreement, warning that the price of steel was going up but Fernandez could "lock in" the price of steel by signing the purchase agreement and making a partial payment. This was a lie. The price of steel never went up. Furthermore, appellant knew that signing the agreement and making a deposit would not "lock in" the price; only releasing the building into production would lock in the price. Just days after Fernandez gave appellant the initial payment of $18,000, appellant wired over $3,000 to Jabil and wrote himself checks for $2,800 in cash. Appellant then returned to the Philippines and remained there until November.

In addition, there is evidence that appellant induced Fernandez to make further payments on the contract while no longer intending to perform, or at least knowing that he would not. *See Taylor*, 450 S.W.3d at 537. When appellant returned home from his second trip to the Philippines, he contacted Fernandez and urged him to make another payment, again telling him that the price of steel was going up and the payment was required to "lock in" the price of steel. This was another lie. Fernandez

–10–

gave him another partial payment of $7,500. According to the evidence, appellant deposited Fernandez's payment, wrote himself a check for $9,000 in cash, moved all of his belongings into storage, and flew back to the Philippines. Appellant did not tell Fernandez that he was planning to leave the country for an extended period of time.

Two weeks later, the appellant called Fernandez again and told him he needed to pay the balance of the deposit. This time Fernandez balked, complaining that appellant had never been to the building site to take measurements. Appellant did not tell Fernandez that he was in the Philippines. Instead, appellant told Fernandez that White would meet him at his property to take measurements and pick up the check. He also told Fernandez that the building would be delivered on January 15, 2017. This was yet another lie. The release for production documentation had not been signed, and appellant never notified the manufacturer to begin work on Fernandez's building. Nevertheless, based on appellant's additional lie, Fernandez agreed to pay $14,800, the amount appellant told him was the balance due. Fernandez gave White a check when he came to the property. The check was deposited into the Standard Steel bank account, and shortly thereafter, appellant wired $15,200 to Jabil, leaving the account with a negative balance.

At this point, Fernandez had given appellant three checks for a total of $40,300. Appellant claims that Fernandez did not get his building because he did not sign the change order, sign the release for production, and pay the $122.50 balance

owed on the deposit. However, appellant did not: (i) inform Fernandez there was a balance due on the deposit; (ii) inform Fernandez that he needed to sign a change order and a release for production; (iii) deliver blueprints for the building; or (iv) submit a purchase order to the steel manufacturer to begin production on Fernandez's building. He lied when he promised Fernandez that the building would be delivered on January 15, 2017. Appellant knew that he had not released the building for production, and he knew that Fernandez would not be receiving the building. Appellant took Fernandez's payments and disappeared. *See Urias v. State*, No. 11-16-00098-CR, 2017 WL 2698100, at *4 (Tex. App.—Eastland June 22, 2017, no pet.) (mem. op., not designated for publication) (holding jury could infer contractor's appropriation of customer's payment was deceptive and without consent because contractor's disappearance indicated he never intended to perform).

This Court is not the fact finder. The jury could have inferred from the evidence that appellant intended or knew that he would not perform his obligations at the time money changed hands. This determination was not so outrageous that a reasonable trier of fact could not agree. *See Wirth*, 361 S.W.3d at 698. Our review of the record reveals legally sufficient evidence to support the jury's verdict of guilt. We resolve appellant's first issue against him.

## B. Admission of Extraneous Evidence

In his second issue, appellant argues that the trial court erred in allowing the State to present testimony from E.G. Roberts and Phillip Ward, two Standard Steel

customers who also gave appellant large sums of money but never received their steel buildings. Appellant claims this evidence should have been excluded based on his rule 404(b) objection. *See* TEX. R. EVID. 404(b).

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Colone v. State*, 573 S.W.3d 249, 264 (Tex. Crim. App. 2019) (citing *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478. Provided the trial court's ruling falls within the reasonable-disagreement zone, we may not substitute what we would have done for what the trial court actually did. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). We uphold the trial court's ruling if it is reasonably supported by the evidence and is correct under any theory of law applicable to the case. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident. *Id.* at 404(b)(2). Intent may also be inferred from proof that the defendant engaged in other similar, recent transactions. PENAL § 31.03(c)(1); *see Johnson*, 560 S.W.3d at 227.

At trial, the State offered testimony from E.G. Roberts and Phillip Ward as extraneous evidence of appellant's intent to deceive pursuant to penal code section 31.03(c)(1). *See* PENAL §31.03(c)(1) ("evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent"). At a hearing outside the presence of the jury, the trial court considered the testimony of the State's witnesses, the testimony of appellant, and the arguments of counsel for both parties. The court denied appellant's objections and allowed the witnesses to testify at trial.

Roberts, the person who introduced Fernandez to appellant, testified that he was the pastor of the Way of Christ Christian Church. On April 26, 2016, Roberts signed a purchase agreement with appellant for the purchase of a steel building for the church. Roberts testified that appellant agreed to take the plans created by the church's architect and to create an actual structure from those plans. Appellant agreed to provide the foundation, have the steel delivered, erect the building, and install the doors and windows. The total price of the building was $168,820, and the deposit requested by appellant was $42,205. Roberts paid the deposit in three payments over a period of several months. Roberts paid $15,000 on April 26, the day the contract was signed. On May 17, 2016, appellant call Roberts to tell him that the price of steel was going up and the price of his building, and his deposit, would be going up. Appellant asked Roberts to sign a change order reflecting this price

–14–

increase and to make another partial payment of $7,505 toward the deposit amount. The same day, appellant sent Roberts another change order to add a porte-cochere to the building plans. Appellant told Roberts that this change order would increase the price of the building by $9,693, and the amount of the deposit by $3,199.

In June or July of 2016, Roberts received blueprints from appellant and, as agreed, paid the balance of the deposit amount. However, when Roberts and his architect tried to contact appellant to discuss the blueprints, they were unable to reach him. After repeated attempts to call appellant, they began trying to reach White, the project coordinator assigned to their building project. He did not return phone calls and did not respond to emails. Roberts never received his building, and he never got his money back.

Pastor Phillip Ward testified that in September 2015, he contracted with appellant for a steel building for his church, Destiny Worship Center. The total cost of the building was $228,900, and the amount of the deposit was $57,225. The church paid $10,000 the day the purchase agreement was signed. The church made subsequent partial payments until the deposit had been paid in full. In early 2016, Ward was ready to put his building into production. His bank attempted to contact appellant about payment but could not reach him. Ward began trying to contact appellant to release the building for production and delivery but he also could not reach appellant. After numerous calls and emails went unanswered, Ward began calling White. White did not answer his phone. Ward was finally able to contact

appellant through Facebook. Appellant told Ward he had to leave the country expeditiously. Ward testified that when he told appellant he needed the church's money back so the building project could be completed, appellant told him he could not give it back. Ward never received the building, and he never got his money back.

Appellant concedes that the circumstances described by Roberts and Ward were similar to the facts in this case. He argues, however, that each of these failures was the result of his failing business—not evidence of his intent to deceive. He urges that the evidence unfairly prejudiced him by causing the jury to confuse repetition with intent.

The testimony of appellant's other customers reveals a pattern of conduct on his part of promising to perform work with no intention of completing it. *See Taylor*, 450 S.W.3d at 538–39; *see also Lopez v. State*, 316 S.W.3d 669, 678 (Tex. App.—Eastland 2010, no pet.). Appellant negotiated the three contracts and pressured each of his customers to pay the remaining balance due on their deposits as appellant was closing down his business and leaving the country. Based on the testimony from Roberts and Ward, a rational fact-finder could have found beyond a reasonable doubt that appellant did not intend to facilitate the production and delivery of Fernandez's steel building at the time he accepted the deposit payments from Fernandez.

We conclude that appellant has not shown that the trial court erred in admitting the other customers' testimony because the trial court could have reasonably concluded that the evidence was admissible to show appellant's intent

–16–

under both penal code section 31.03(c)(1) and rule 404(b). *See* PENAL § 31.03(c)(1); TEX. R. EVID. 404(b); *see also Lopez*, 316 S.W.3d at 678–79. We overrule appellant's second issue.

## C. Value of Property Taken

In his third issue, appellant challenges the sufficiency of the evidence to prove the amount stolen was $30,000 or more but less than $150,000. He contends that each check constituted a separate theft and they could not be aggregated because the State failed to allege aggregation in the indictment. None of Fernandez's three checks was written for an amount of $30,000 or more. Therefore, appellant argues that the State failed to prove a third-degree felony theft.

Generally, a charge of theft applies to a single occurrence. *Cupit v. State*, 122 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Penal code section 31.09 modifies this rule and permits separate thefts to be aggregated as one offense when they are part of a single scheme or continuing course of conduct. *See* PENAL § 31.09. However, the State must plead aggregation in the indictment. *Thomason v. State*, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994). An indictment that fails to plead an aggregated theft alleges only a single occurrence under section 31.03. *Id.*

Because the indictment in this case does not mention the "single scheme or continuing course of conduct" element, the indictment did not authorize a conviction for aggregated theft. *Id.* Thus, a hypothetically correct jury charge would authorize

–17–

a conviction for only one theft offense. To be sufficient, the State's evidence had to show a single theft of property on or between September 28, 2016 and December 10, 2016, that was valued at more than $30,000 but less than $150,000. The State failed to meet this burden. Accordingly, we resolve appellant's third issue in his favor.

This resolution does not dictate acquittal, however. This Court may reform a conviction to reflect a lesser-included offense if we find that the evidence was insufficient to support conviction of the charged offense but sufficient to support the lesser-included offense. *See Walker v. State*, 594 S.W.3d 330, 338 (Tex. Crim. App. 2020); *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). In this case, the State provided sufficient evidence to support a conviction for theft of property valued at $2,500 or more but less than $30,000, a state jail felony. *See* PENAL § 31.03(e)(4)(A). Each of the checks Fernandez gave to appellant was for an amount greater than $2,500; thus, evidence of any of these payments is sufficient. *See Swann v. State*, No. 05-96-01852-CR, 2000 WL 141067, *3 (Tex. App.—Dallas Feb. 9, 2000, no pet.) (mem. op., not designated for publication) (reforming judgment to reflect conviction for lesser-included offense of Class A misdemeanor theft where State failed to allege aggregated theft in indictment but presented evidence sufficient to prove single misdemeanor theft). Accordingly, we conclude that the judgment in this case should be reformed to reflect that appellant was convicted of the lesser-

included offense of theft of property valued at $2,500 or more but less than $30,000, a state jail felony.

### III. Conclusion

We modify the judgment to reflect a conviction for the lesser-included offense of theft of property valued at $2,500 or more but less than $30,000, and we affirm the conviction as set forth in the modified judgment. *See* TEX. R. APP. P. 43.2(b). We remand this cause for a new trial on punishment only. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b); *see also Swann*, 2000 WL 141067, at *3.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

190307f.u05
Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

KEVIN NEAL KISSIRE, Appellant

No. 05-19-00307-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-83135-2017.
Opinion delivered by Justice Pedersen, III. Justices Myers and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Offense for which Defendant Convicted: Lesser-included offense of theft of property valued at $2,500 or more but less than $30,000

Statute for Offense: 31.03(e)(4) Penal Code

Degree of Offense: State Jail Felony

As **REFORMED**, the conviction as set forth in the modified judgment is **AFFIRMED**, and the cause is **REMANDED** for further proceedings pursuant to Tex. Code Crim. Proc. Ann. art. 44.29(b).

Judgment entered this 31st day of August, 2020.