# NO. 12-17-00375-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DON EDWARD TUCKER,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Don Edward Tucker, appeals from his conviction for theft from an elderly individual. In one issue, he challenges the legal sufficiency of the evidence to support his conviction. We affirm.

### BACKGROUND

The State charged Appellant with theft from an elderly person in an amount exceeding $1,500 but less than $20,000. At a bench trial, Appellant pleaded "not guilty."

Thomas Goodman, seventy-two years old, testified that he entered a contract with Appellant for some work on Thomas's home. Thomas gave Appellant a $7,000 check to pay for labor and purchase materials. Appellant later returned the check, telling Thomas that he could not cash it, and requested cash. Thomas gave Appellant permission to use his credit card to purchase materials and told Appellant that he would give him cash when needed to purchase additional materials and pay for labor. He subsequently gave Appellant a total of $5,000 in cash.

Thomas testified that Appellant purchased materials, but they were not the materials Thomas wanted. Thomas returned the materials and purchased new materials. He also complained that Appellant never produced a building permit, but that a man named Charles

Brooks brought Thomas a permit in Brooks's name. Thomas further testified that Appellant was not licensed or bonded despite representing himself as a contractor.

Additionally, Thomas testified that he discovered some charges to his bank account, including a $466.12 charge that Appellant's daughter made after obtaining the routing number and checking account number off the $7,000 check that Thomas initially gave Appellant. There were also two charges for truck rentals, one for $200 that Thomas did not have reversed and one for $400 that Thomas did have reversed. He was never reimbursed for these three charges. Thomas further described an instance when Appellant came by to discuss the contract and requested a flashlight. While Thomas left to retrieve the flashlight, Appellant left the home and, shortly thereafter, Thomas discovered that $900 in cash that had been on the kitchen counter was missing. He admitted that he could not prove Appellant took the money.

According to Thomas, aside from delivering materials to Thomas's home, Appellant did nothing to provide the labor or installation per the contract. Thomas testified that Appellant simply disappeared and he could not reach Appellant. He admitted that Appellant offered his tractor as collateral or security to ensure his performance under the contract and that he held the bill of sale as collateral, but that he could never locate the tractor, as it too disappeared. At some point, Thomas heard Appellant was in jail, but he had already decided to end the agreement because Appellant was not a contractor.

Thomas testified that the $5,000 and $900 in cash were taken without his effective consent. He considered this a theft because Appellant did not do what he promised to do under the contract, and never offered to return Thomas's money. He agreed that Appellant deceived him into thinking that he would perform under the contract. He explained that he filed charges against Appellant because he gave money for services not rendered.

Sheryl Goodman, Thomas's wife, confirmed that Thomas gave Appellant a $7,000 check, which Appellant later returned uncashed, Thomas subsequently gave Appellant a total of $5,000 in cash, Appellant claimed his daughter obtained information off the Goodmans' check and used it to make a purchase for $466.12, and that other charges included $115.74 in materials they never received, a $200 U-Haul purchase, and the purchase of a chest freezer for $237.04. Sheryl complained that Appellant kept postponing or making excuses for his failure to provide a building permit or bonding documents. She later learned that Appellant never paid the fee to become bonded.

2

Ronald Stubblefield, an investigator with the Lufkin Police Department, testified that Appellant admitted receiving the cash from the Goodmans and claimed that he reimbursed them for his daughter's charge. He denied the freezer charge and told Stubblefield that he bought the freezer himself without charging it to the Goodmans' credit card, but told Stubblefield that the $115 charge was for a tool belt. He told Stubblefield that part of the money Thomas gave him was his pay and part was a loan. He explained that he recently got out of prison and that the Goodmans hired him to do some roofing, but that it rained and they subsequently fired him. Appellant referred to them as "good people" and told Stubblefield that he would "make good" and try to get the money back. Stubblefield asked Appellant to come by the police department, which Appellant never did, but he testified that Appellant was incarcerated sometime after their telephone conversation.

Appellant testified that he attempted to cash the $7,000 check but his local bank would not cash an out of town check. Thomas told him to return the check and gave Appellant his credit card number to use to purchase materials, which Appellant did. He explained that he purchased two tool belts and two roofing hammers because he needed supplies for his workers. He further testified to purchasing the freezer with cash and was unaware that the store put the freezer on the credit card receipt. According to Appellant, Thomas gave U-Haul permission to charge his credit card for rental of a truck to bring supplies to Thomas's home. He specifically testified to receiving (1) $1,000 to secure rooms for his employees, to purchase other necessary items, and to pay for travel to and from Conroe where he lived, (2) $1,000 to repair his truck, and (3) $2,000 as a loan on his tractor. He testified that his tractor went missing while he was in jail and that he viewed the $2,000 as a loan rather than an advance for the job. Additionally, Appellant claimed to have reimbursed Thomas for his daughter's charge even though he did not believe he owed for the charge because it was reversed. He testified that Thomas is mistaken about the $900. He testified to owing Thomas $5,000 and stated that he would pay the Goodmans back in installments and with his tax return.

Appellant testified that once he "put[s] material on the job that means [he's] going to do the job." However, it rained either every day or every other day between when he took the job and when he went to jail. He explained that he was licensed and bonded, but had to return to school to renew his bonding license and pay $500 to complete the class, which he never paid because he went to jail. He testified that Brooks is his uncle and that he uses Brooks's permit,

3

but that when Brooks delivered the permit to Thomas, Thomas did not want the permit. He testified that he is proud of his work and likes finishing his jobs, so he would have completed the agreement if given the time and if the Goodmans had not already hired someone to complete the work. He admitted the money was given to him in good faith and that he has a duty and obligation to repay it. He also admitted taking the money and not completing the work because of certain circumstances. Appellant believed that he was being taken advantage of and denied any intent to scheme the Goodmans. He testified that he did not intend to "mess over" the Goodmans and did not believe he was taking advantage of anyone when he was willing to pay back the money.

At the conclusion of trial, the trial court found Appellant "guilty" of theft from an elderly individual and sentenced him to imprisonment for ten years. This proceeding followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is legally insufficient to support his conviction. According to Appellant, he partially performed under the contract and his failure to perform the remainder of the contract results from circumstances that arose after and independent from the contract. He contends that the State failed to prove that he did not intend to perform the contract and thereby failed to prove the element of deception.

### Standard of Review and Applicable Law

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id*. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the

4

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id*. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. This standard applies to bench trials. *Taylor v. State*, 450 S.W.3d 528, 535 (Tex. Crim. App. 2014).

As applicable to this case, a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property and the owner of the appropriated property was an elderly individual at the time of the offense. TEX. PENAL CODE ANN. § 31.03(a), (f)(3)(A) (West Supp. 2017). Appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(b)(1). Consent is not effective if induced by deception or coercion. *Id*. § 31.01(3)(A) (West Supp. 2017). "Deception" includes (1) "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true," and (2)

"promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed." *Id*. § 31.01(1)(A), (E).

<u>Analysis</u>

On appeal, Appellant maintains that the work was not performed because of various reasons, such as his incarceration and Thomas's dissatisfaction with him, and that his provision of collateral is consistent with an intent to perform under the contract. He contends that he partially performed the parties' agreement and lacked the requisite intent not to perform. Additionally, Appellant argues that evidence of the missing $900, the $466.12 charge, the U-Haul charge, the chest freezer, and the $115 charge are extraneous offenses and do not establish deception. According to Appellant, this case presents "a civil dispute and the record does not sustain the criminal offense for which he was convicted."

With respect to partial performance, as the Texas Court of Criminals Appeals has explained, that partial or even substantial work has been done on a contract will not invariably negate either the intent to deprive or the deception necessary to establish the unlawfulness of the initial appropriation. *Taylor*, 450 S.W.3d at 537. Thus, the fact that Appellant purchased materials and delivered them to Thomas's house is not dispositive.

Additionally, even absent evidence that Appellant deems extraneous, the record contains evidence of deception. Specifically, the trial court heard evidence that Appellant represented himself to the Goodmans as a contractor, leaving the false impression that he was licensed and bonded. The trial court also heard evidence that this false impression likely affected Thomas's judgment in the transaction, and that Appellant knew the impression to be untrue. Sheryl testified that Appellant kept making excuses regarding his failure to produce a permit or bonding documents, which she wanted to see before work began on the house. She further testified that Appellant furnished an email from the bonding company to show that he had a surety bond, but when she contacted the company, she discovered that the applicable fee had not been paid. That Appellant attempted to proceed under another contractor's permit further evidences Appellant's awareness regarding the falsity of the impression left with the Goodmans regarding his own bonding and licensing. Despite the cash advances supplied by Thomas and Thomas's alleged

6

rejection of Brooks's permit, Appellant never furnished his own permit or paid the bonding fee. The trial court could reasonably conclude that had Appellant intended to perform as promised, he would have taken the necessary steps to obtain the permit and bonding, particularly in light of the fact that he had the resources in the form of Thomas's money to pay the $500 fee.

To compound matters, Appellant never attempted installation of the materials, attempted any further construction work, or attempted to contact the Goodmans to offer an explanation for his failure to perform. Nor did Appellant return or offer to return the $5,000 in cash that Thomas paid for performance of the contract, even though he told Stubblefield that he would reimburse the Goodmans. As sole judge of Appellant's credibility and the weight to be given his testimony, the trial court was entitled to reject Appellant's testimony that he intended to perform and would have performed if given the opportunity. *See Brooks*, 323 S.W.3d at 899–900; *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (intent may be inferred from circumstantial evidence, such as the defendant's acts, words, and conduct).

Based on the evidence presented, the trial court could reasonably conclude that Appellant knew he was not licensed and bonded and created a false impression as to these facts that likely affected Thomas's judgment in the transaction. *See* TEX. PENAL CODE ANN. § 31.01(1)(A); *see also Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (when reviewing the sufficiency of the evidence, we consider events occurring before, during and after the offense and may rely on the defendant's actions which show an understanding and common design to do the prohibited act). Thus, viewing the evidence in the light most favorable to the verdict, we conclude that the trial court could find, beyond a reasonable doubt, that Appellant committed theft, by deception, from an elderly individual. *See Brooks*, 323 S.W.3d at 912; *see also* TEX. PENAL CODE ANN. §§ 31.03(a), (f)(3)(A), 31.01(1)(A). Because the evidence is sufficient to support Appellant's conviction, we overrule his sole issue.

### DISPOSITION

Having overruled Appellant's only issue, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered June 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*
(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 29, 2018

NO. 12-17-00375-CR

**DON EDWARD TUCKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2014-0683)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*